UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DOMESTIC CONSTRUCTION, LLC,

    Plaintiff,

v.

BANK OF AMERICA, N.A.,

    Defendant/Third-Party Plaintiff,

v.

IDEAL SERVICES, INC.,

    Third-Party Defendant/Fourth-Party Plaintiff,

v.

KERMIT MILLS and JANE DOE MILLS, and the marital community comprised thereof,

    Fourth-Party Defendants,

CASE NO. C07-5357BHS

ORDER GRANTING DEFENDANT BANK OF AMERICA'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT FINDING THAT BANK OF AMERICA ACTED NEGLIGENTLY

This matter comes before the Court on Defendant Bank of America's Motion for Summary Judgment (Dkt. 120) and Plaintiff's Motion for Partial Summary Judgment Finding that Bank of America Acted Negligently (Dkt. 124). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants Defendant's motion and denies Plaintiff's motion for the reasons stated herein.

ORDER - 1

# I. PROCEDURAL HISTORY

On December 12, 2006, Plaintiff Domestic Construction, LLC, ("Domestic") filed a complaint in the United States District Court for the Middle District of Louisiana against Defendant Bank of America. Dkt. 52-4. Plaintiff requests damages for violations of common law conversion, negligence, failure to act in accordance with reasonable commercial standards, the Uniform Commercial Code ("UCC"), and bad faith. *Id*.

In February of 2007, Defendant answered the complaint and filed a third-party complaint against Third-Party Defendant Ideal Services, Inc. ("Ideal"). Dkt. 52-11. Defendant alleges that Ideal may be liable for breach of warranty under UCC 3-416 and UCC 4-207, conversion, unjust enrichment, intentional or negligent misrepresentation, contribution/indemnity, and equitable indemnification. *Id*.

On July 16, 2007, the matter was transferred to this Court and assigned to the undersigned. Dkts. 52-55.

On December 4, 2007, Ideal answered the third-party complaint, filed a cross-claim against Plaintiff, and filed a fourth-party complaint against Fourth-Party Defendants Kermit Mills and Jane Doe Mills. Dkt. 66.

On March 3, 2008, Plaintiff answered Ideal's cross-claim and filed a counterclaim against Ideal. Dkt. 73.

On June 24, 2009, Defendant filed a Motion for Summary Judgment (Dkt. 120) and Third-Party Defendant Ideal filed a Motion for Summary Judgment (Dkt. 125). On July 13, 2009, Plaintiff responded to both motions. Dkt. 131. On July 17, 2009, Defendant replied (Dkt. 138) and Ideal replied (Dkt. 139).

On June 24, 2009, Plaintiff filed a Motion for Partial Summary Judgment Finding that Bank of America Acted Negligently. Dkt. 124. On July 13, 2009, Defendant responded. Dkt. 132. Plaintiff did not reply.

## II. FACTUAL BACKGROUND

On October 5, 2004, Kermit Mills registered Domestic Construction, LLC, with the Louisiana Secretary of State. Dkt. 131-2, Declaration of Kermit Mills ("Mills Decl."), ¶ 2. In late 2004 or early 2005, Kermit Mills approached Ray Salzer regarding "the possibility of selling a non-controlling interest in Domestic Construction, LLC." *Id*. ¶¶ 3-5. At that time, Mr. Salzer was the president of Ideal and Sue Erb was the controller of Ideal. Dkt. 125 at 4.

The parties dispute whether an agreement or partnership was ever formed between either Mr. Salzer or Ideal and Plaintiff. Although Mr. Mills and Mr. Salzer exchanged multiple proposed agreements, it is undisputed that they did not sign a final business agreement. They did, however, engage in various construction projects based on oral representations and provisions of those proposed agreements. For example, in his deposition, Mr. Mills stated that:

> [Mr. Salzer] was supposed to handle everything and at the end of day [sic], we were supposed to be splitting 49/51 percent profit of the company with all upfront stuff . . . supposed to be done by Ray Salzer for Domestic.

Dkt. 121, Declaration of William K. Rasmussen ("Rasmussen Decl."), Exh. 1, Deposition of Kermit Mills ("Mills Dep."), at 354-55 (deposition pagination). Moreover, in the 30(b)(6) deposition of Domestic, Mr. Mills stated that Ideal obtained insurance for Domestic, maintained a bond for Domestic, and opened credit accounts in the name of "Ideal d/b/a Domestic Construction." Dkt. 126, Declaration of Christina Gerrish Nelson ("Nelson Decl."), Exh. B.

On March 25, 2005, Mr. Mills sent Mr. Salzer and Ms. Erb a brochure for Domestic. Under the "Company Information" section, the brochure reads in part as follows:

> Domestic Construction was founded by Kermit Mills (former Vice-President of operations and project manager) who brings over 13 years of experience to the construction industry. Domestic Construction LLC was formed to become a one stop source for retailers. In order to provide our clients the entire services they require under one entity, Kermit Mills teamed up with Ray Salzer, owner of Ideal Services and Ricky Davis,

> owner of Alpheaus Davis, House of Colors and Boley Designs as a joint venture to form Domestic Construction LLC, a general contractor and construction firm. With offices located in Louisiana as well as the Pacific Northwest region, Domestic Construction LLC is a diversified construction company developing expertise in a wide range of areas allowing us to operate with a reputation for dependability.

Nelson Decl., Exh. C. Under the "Company Contacts" section, Mr. Mills is listed as President and Mr. Salzer is listed as President of Northwest Operations. *Id*.

In June 2005, Domestic filed a Foreign Limited Liability Company Registration with the Washington Secretary of State. Dkt. 134, Second Declaration of Christina Gerrish Nelson, Exh. A. The Initial Annual Report cover sheet lists Mr. Mills, Mr. Salzer, and Ms. Erb as members of the foreign LLC. *Id*. On October 2, 2006, the Secretary of State revoked Domestic's authority to do business in Washington. *Id*.

In their briefing on the pending dispositive motions, Domestic and Mr. Mills claim that "whether [Mr.] Mills and [Mr.] Salzer formed some type of partnership or joint venture is simply irrelevant and constitutes a red herring . . . ." Dkt. 131 at 4. In his declaration that was submitted in opposition to Defendant's and Ideal's motions, Mr. Mills maintains that he was the sole member of Domestic. Mills Decl. ¶ 9. Moreover, he claims that he "has never had any intention of forming a partnership between himself and Ray Salzer or Ideal Services, Inc." *Id*. ¶ 13. Although Mr. Mills admits that, in the course of business, he referred to Mr. Salzer as his partner, Mr. Mills claims that he was merely using "informal vernacular." *Id*. ¶ 16.

It is undisputed that, at all relevant times, both Domestic and Ideal had bank accounts with Defendant. Defendant has submitted its agreement with Domestic that is titled "Business Financial Relationship Agreement." Rasmussen Decl., Exh. C. The document lists three persons under the "Deposit Account Signature Card" portion: Susan Erb, Mr. Salzer, and Mr. Mills. *Id*. All three signed the document in two separate places. *Id*.

Defendant has also submitted Ideal's account agreement and Ideal's Washington Business License. *Id*., Exhs. D, E. The agreement lists Mr. Salzer and Ms. Erb as

authorized persons on the accounts, and one of the FirstChoice Business accounts is titled "Domestic Con." *Id.*, Exh. D. With regard to the business license, one of Ideal's registered trade names was "Domestic Construction." *Id.*, Exh E.

Over the next year or so, Domestic (using Ideal's employees) performed construction projects for Home Depot and other companies. All costs were fronted by Ideal, with the expectation and understanding that Ideal would be paid back for all such costs. *See* Mills Dep. at 238, 275, 497. Moreover, all accounting and related financial operations for Domestic were handled by Mr. Salzer and Ms. Erb out of an office in Tacoma, Washington, which was in the same office space used by Ideal. *See* Mills Dep. at 74-76, 80-81, 438-439. Home Depot paid for some of the projects with checks that were payable to "Domestic Construction, LLC." *See id.*, Exh F. These checks were deposited over a four-month time period from February to May of 2006. *Id*. Under the endorsement portion of these checks, it reads "Pay to the Order of Bank of America . . . For Deposit Only, Ideal Services Inc. Accounts Payable." *Id*.

### III. DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if

there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Domestic - Ideal Relationship**

Under the Washington Uniform Partnership Act, a partnership is formed by "the association of two or more persons to carryon as co-owners of a business for profit . . . , whether or not the persons intend to form a partnership." RCW 25.05.055(1). The act defines persons to include "an individual, corporation, . . . limited liability company, association, joint venture, . . . agency, or instrumentality, or any other legal or commercial entity." RCW 25.05.005(10).

The formation of a partnership is not dependent upon a formal contract. *See Roediger v. Reid*, 133 Wn. 608 (1925). The fundamental test for determining the existence of a partnership is whether it was the intention of the parties to form a partnership as manifested in their express agreements, statements, and conduct. *Minder v. Gurley*, 37 Wn.2d 123, (1950).

Washington law also recognizes joint ventures, which are similar to partnerships but are limited to particular transactions or projects. *Pietz v. Indermuehle*, 89 Wn. App. 503, 510 (1998). Because a joint venture is in the nature of a partnership, "[t]he relations of the parties in each of such associations are so similar that their rights, duties, and liabilities are generally tested by the same rules." *Barrington v. Murry*, 35 Wn.2d 744, 752 (1950) (citing *Paulson v. McMillan*, 8 Wn.2d 295 (1941)).

In this case, both Defendant and Ideal argue that there was either a partnership or joint venture between Domestic and Ideal. Dkt. 120 at 7-10; Dkt. 125 at 10-15. All admissible evidence in the record establishes the existence of a joint venture between Domestic and Ideal to complete certain construction projects. Even Mr. Mills stated that he and Mr. Salzer were "to be splitting 49/51 percent profit of the company with all upfront stuff . . . supposed to be done by Ray Salzer for Domestic." Moreover, the public records as well as the banking documents list Mr. Salzer and Ms. Erb as officers or members of Domestic.

The only evidence in the record that contradicts the finding that a joint venture existed is Mr. Mills' declaration that was submitted in opposition to the dispositive motions. However, the statements set forth in that declaration are insufficient evidence for at least two reasons. First, the Court may disregard the portions of Mr. Mills' declaration that are contrary to his prior deposition testimony. *See Foster v. Arcata Associates, Inc.*, 772 F.2d 1453, 1462 (1985), *overruled on other grounds by Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262 (9th Cir. 1991). Second, under Washington partnership laws, the Court must consider Mr. Mills' *express* agreements, statements and conduct. *See Minder, supra*. Even if Mr. Mills never intended to engage in a joint venture or accidently used "informal vernacular" in describing his business relationships to third parties, Domestic and Ideal were carrying on a business for profit. Domestic, through Mr. Mills, provided the business contacts with Home Depot while Ideal, through Mr. Salzer, fronted the money for and completed the relevant construction projects. Most

importantly, there was an agreement to split the profits of the business endeavor. Thus, Mr. Mills' contradictory, subjective assertions are irrelevant as to the question of whether his manifested expressions conveyed that Domestic and Ideal engaged in a joint venture.

Plaintiff also argues that "there is a question of fact as to whether a partnership was formed which is properly determined by the jury." But Plaintiff fails to articulate what evidence creates that alleged question of fact. Its burden as the nonmoving party is to produce evidence supporting the claimed factual dispute. *See Matsushita, supra*. Moreover, Plaintiff may not merely rely on the assertion that there is a factual dispute "in the hopes that evidence can be developed at trial to support the claim." *See T.W. Elec. Serv., supra*. Plaintiff has failed to meet its burden on this issue.

Therefore, the Court finds that, based on the admissible evidence in the record, there was at least a joint venture between Domestic and Ideal to complete certain construction projects in the state of Washington.

**C. Defendant Bank of America's Motion for Summary Judgment**

Defendant moves for summary judgment on four independent grounds. Dkt. 120 at 3-4. The Court will address (1) whether the acts of Ideal bind Domestic in the joint venture and (2) whether Mr. Salzer and/or Ms. Erb had actual, implied, and apparent authority.

**1. The Joint Venture**

Defendant requests that the Court enter summary judgment in its favor because all of Plaintiff's claims depend on the erroneous allegation that Defendant improperly accepted the checks that were payable to Domestic but endorsed by Ideal. Dkt. 120 at 3.

Under the Washington Uniform Partnership Act, the act of each partner binds the partnership. The relevant portion of the statute reads as follows:

> Each partner is an agent of the partnership for the purpose of its business. An act of a partner, including the execution of an instrument in the partnership name, for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership, unless the partner had no authority to act for the partnership in the particular matter and the person with whom the partner

was dealing knew or had received a notification that the partner lacked authority.

RCW 25.05.100(1).

In this case, Defendant argues that the acts of Ideal in endorsing the checks and depositing them into its account bind the Domestic/Ideal joint venture. The Court agrees. Handling payments for the construction projects were acts in the ordinary course of business for the Domestic/Ideal joint venture. Moreover, the banking agreements in the record show that Mr. Salzer and Ms. Erb had authority to deposit checks on behalf of either Domestic or Ideal. There is no evidence in the record that Defendant knew or had reason to know that Mr. Salzer or Ms. Erb lacked authority to deposit checks on behalf of the joint venture. Therefore, the checks in question were neither fraudulently transferred nor improperly negotiated because they were deposited by a party involved in the Domestic/Ideal joint venture and into an account controlled by a party of the Domestic/Ideal joint venture.

The Court grants Defendant Bank of America's motion for summary judgment and dismisses all of Plaintiff's claims against Defendant.

## 2. Actual, Implied, and Apparent Authority

The UCC authorizes indorsements (a subset of "signatures") to be made in a representative capacity, which are effective and binding on the principal. Specifically, RCW 3-401 (titled "Signature") provides that:

> (a) A person is not liable on an instrument unless (i) the person signed the instrument, or (ii) the person is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under RCW 62A.3-402.

RCW 62A.3-401(a).

RCW 62A.3-402 provides in pertinent part that:

> (a) If a person acting, or purporting to act, as a representative signs an instrument by signing either the name of the represented person or the name of the signer, the represented person is bound by the signature to the same extent the represented person would be bound if the signature were on a simple contract. If the represented person is bound, the signature of the representative is the "authorized signature of the represented person"

ORDER - 9

and the represented person is liable on the instrument, whether or not
identified in the instrument.

RCW 62A.3-402(a).

"Signature includes an indorsement." Comment 1 to UCC 3-401. Signatures can take many forms:

A signature may be made (i) manually or by means of a device or machine, and (ii) by the use of any name, including a trade or assumed name, or by a word, mark, or symbol executed or adopted by a person with present intention to authenticate a writing.

RCW 62A.3-401(b)

In this case, Defendant argues that Mr. Salzer and Ms. Erb "had actual, implied, and apparent authority to endorse the checks and deposit them into the Ideal Services account at Bank of America." Dkt. 120 at 10. The most compelling evidence in support of this argument is that:

Mr. Salzer and [Ms.] Erb were listed as signers on the Domestic signature card, and Domestic Construction was listed as a dba trade name on the Ideal Services signature card, all before any of the Home Depot checks were issued . . . .

Dkt. 138 at 6. Plaintiff counters that "Mills never authorized [Ms.] Erb or [Mr.] Salzer to divert checks written to Domestic Construction, LLC into an account held solely by IDEAL." Dkt. 131 at 22. Regardless of specific instructions, Mr. Mills did represent to Defendant that Ms. Erb and Mr. Salzer were authorized to act on behalf of Domestic. Moreover, the year-long course of dealing between the parties with Mr. Salzer and/or Ms. Erb handling the financial transactions in Washington shows that they had at least apparent authority to bind Domestic to these transactions.

Therefore, the Court also grants Defendant's motion on the grounds that Ms. Erb and/or Mr. Salzer had actual, apparent, or implied authority to deposit the checks in question.

**D.     Plaintiff's Motion for Partial Summary Judgment**

Plaintiff requests that a "finding that depositing checks written to Domestic Construction, LLC into an account held by Ideal Services, Inc. was *per se* negligent."

ORDER - 10

Dkt. 124 at 2 (emphasis in original). The Court, however, has found that the checks were neither fraudulently transferred nor improperly negotiated. Plaintiff's arguments to the contrary are meritless. Moreover, Plaintiff's citations are factually and legally distinguishable from the record before the Court. Therefore, Plaintiff's motion is denied.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendant Bank of America's Motion for Summary Judgment (Dkt. 120) is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment Finding that Bank of America Acted Negligently (Dkt. 124) is **DENIED**.

DATED this 26th day of August, 2009.

_____
BENJAMIN H. SETTLE
United States District Judge

ORDER - 11