UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DOMESTIC CONSTRUCTION, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>BANK OF AMERICA, N.A.,<br><br>    Defendant/Third-Party Plaintiff,<br><br>  v.<br><br>IDEAL SERVICES, INC.,<br><br>    Third-Party Defendant/Fourth-Party Plaintiff,<br><br>  v.<br><br>KERMIT MILLS and JANE DOE MILLS, and the marital community comprised thereof,<br><br>    Fourth-Party Defendants, | CASE NO. CV07-5357BHS<br><br>ORDER GRANTING THIRD-PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DENYING FOURTH-PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Third-Party Defendant's motion for partial summary judgment (Dkt. 125), Plaintiff's motion for summary judgment (Dkt. 123), and Fourth-Party Defendant's Motion for Summary Judgment (Dkt. 122). The Court has considered the pleadings filed in support of and in opposition to the motions and the

ORDER - 1

1 remainder of the file and hereby grants Third-Party Defendant's motion, denies Plaintiff's
2 motion, and denies Fourth-Party Defendant's motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On December 12, 2006, Plaintiff Domestic Construction, LLC, ("Domestic") filed a complaint in the United States District Court for the Middle District of Louisiana against Defendant Bank of America. Dkt. 52-4. Plaintiff requests damages for violations of common law conversion, negligence, failure to act in accordance with reasonable commercial standards, the Uniform Commercial Code ("UCC"), and bad faith. *Id*.

In February of 2007, Defendant answered the complaint and filed a third-party complaint against Third-Party Defendant Ideal Services, Inc. ("Ideal"). Dkt. 52-11. Defendant alleges that Ideal may be liable for breach of warranty under UCC 3-416 and UCC 4-207, conversion, unjust enrichment, intentional or negligent misrepresentation, contribution/indemnity, and equitable indemnification. *Id*.

On July 16, 2007, the matter was transferred to this Court and assigned to the undersigned. Dkts. 52-55.

On December 4, 2007, Ideal answered the third-party complaint, filed a cross-claim against Plaintiff, and filed a fourth-party complaint against Fourth-Party Defendants Kermit Mills and Jane Doe Mills. Dkt. 66.

On March 3, 2008, Plaintiff answered Ideal's cross-claim and filed a counterclaim against Ideal. Dkt. 73. Plaintiff alleges that (1) Ideal converted negotiable instruments held by Plaintiff; (2) Ideal received funds by way of intentional or negligent misrepresentations to Defendant Bank of America; (3) Ideal violated UCC provisions governing negotiable instruments; (4) Ray Salzer defamed Plaintiff causing the loss of numerous contracts; (5) Ideal and/or Ray Salzer intentionally interfered with Plaintiff's contracts; (6) Ideal, Ray Salzer and/or Sue Erb breached fiduciary duties owed to Plaintiff; and (7) Ray Salzer employed a fraudulent scheme to deprive Plaintiff of money and contracts. *Id*. at 9-14.

On June 24, 2009, Defendant filed a Motion for Summary Judgment (Dkt. 120) and Ideal filed a Motion for Summary Judgment (Dkt. 125). On July 13, 2009, Plaintiff responded to both motions. Dkt. 131. On July 17, 2009, Defendant replied (Dkt. 138) and Ideal replied (Dkt. 139).

On June 24, 2009, Plaintiff filed a Motion for Partial Summary Judgment Finding that Bank of America Acted Negligently. Dkt. 124. On July 13, 2009, Defendant responded. Dkt. 132. Plaintiff did not reply.

On June 24, 2009, Kermit Mills filed a Motion for Summary Judgment. Dkt. 122. On July 13, 2009, Ideal responded. Dkt. 135. Plaintiff did not reply.

On June 24, 2009, Plaintiff filed a Motion for Partial Summary Judgment Finding Kermit Mills to be the Sole Member of Domestic Construction, LLC. Dkt. 123. On July 13, 2009, Ideal responded. Dkt. 133. Plaintiff did not reply.

On June 24, 2009, Ideal filed a Motion for Partial Summary Judgment. Dkt. 125. On July 13, 2009, Plaintiff and Mr. Mills responded. Dkt. 131. On July 17, 2009, Ideal replied. Dkt. 139.

On August 26, 2009, the Court issued an Order granting Defendant Bank of America's Motion for Summary Judgment (Dkt. 120) and denying Plaintiff's Motion for Partial Summary Judgment Finding that Bank of America Acted Negligently (Dkt. 124). Dkt. 171.

## II. FACTUAL BACKGROUND

On October 5, 2004, Kermit Mills registered Domestic Construction, LLC, with the Louisiana Secretary of State. Dkt. 131-2, Declaration of Kermit Mills ("Mills Decl."), ¶ 2. In late 2004 or early 2005, Kermit Mills approached Ray Salzer regarding "the possibility of selling a non-controlling interest in Domestic Construction, LLC." *Id*. ¶¶ 3-5. At that time, Mr. Salzer was the president of Ideal and Sue Erb was the controller of Ideal. Dkt. 125 at 4.

The parties dispute whether an agreement or partnership was ever formed between either Mr. Salzer or Ideal and Plaintiff. Although Mr. Mills and Mr. Salzer exchanged multiple proposed agreements, it is undisputed that they did not sign a final business agreement. They did, however, engage in various construction projects based on oral representations and provisions of those proposed agreements. For example, in his deposition, Mr. Mills stated that:

> [Mr. Salzer] was supposed to handle everything and at the end of day [sic], we were supposed to be splitting 49/51 percent profit of the company with all upfront stuff . . . supposed to be done by Ray Salzer for Domestic.

Dkt. 121, Declaration of William K. Rasmussen ("Rasmussen Decl."), Exh. 1, Deposition of Kermit Mills ("Mills Dep."), at 354-55 (deposition pagination). Moreover, in the 30(b)(6) deposition of Domestic, Mr. Mills stated that Ideal obtained insurance for Domestic, maintained a bond for Domestic, and opened credit accounts in the name of "Ideal d/b/a Domestic Construction." Dkt. 126, Declaration of Christina Gerrish Nelson ("Nelson Decl."), Exh. B.

On March 25, 2005, Mr. Mills sent Mr. Salzer and Ms. Erb a brochure for Domestic. Under the "Company Information" section, the brochure reads in part as follows:

> Domestic Construction was founded by Kermit Mills (former Vice-President of operations and project manager) who brings over 13 years of experience to the construction industry. Domestic Construction LLC was formed to become a one stop source for retailers. In order to provide our clients the entire services they require under one entity, Kermit Mills teamed up with Ray Salzer, owner of Ideal Services and Ricky Davis, owner of Alpheaus Davis, House of Colors and Boley Designs as a joint venture to form Domestic Construction LLC, a general contractor and construction firm. With offices located in Louisiana as well as the Pacific Northwest region, Domestic Construction LLC is a diversified construction company developing expertise in a wide range of areas allowing us to operate with a reputation for dependability.

Nelson Decl., Exh. C. Under the "Company Contacts" section, Mr. Mills is listed as President and Mr. Salzer is listed as President of Northwest Operations. *Id.*

In June 2005, Domestic filed a Foreign Limited Liability Company Registration with the Washington Secretary of State. Dkt. 134, Second Declaration of Christina

ORDER - 4

Gerrish Nelson, Exh. A. The Initial Annual Report cover sheet lists Mr. Mills, Mr. Salzer, and Ms. Erb as members of the foreign LLC. *Id.* On October 2, 2006, the Secretary of State revoked Domestic's authority to do business in Washington. *Id.*

In their briefing on the pending dispositive motions, Domestic and Mr. Mills claim that "whether [Mr.] Mills and [Mr.] Salzer formed some type of partnership or joint venture is simply irrelevant and constitutes a red herring . . . ." Dkt. 131 at 4. In his declaration that was submitted in opposition to Defendant's and Ideal's motions, Mr. Mills maintains that he was the sole member of Domestic. Mills Decl. ¶ 9. Moreover, he claims that he "has never had any intention of forming a partnership between himself and Ray Salzer or Ideal Services, Inc." *Id.* ¶ 13. Although Mr. Mills admits that, in the course of business, he referred to Mr. Salzer as his partner, Mr. Mills claims that he was merely using "informal vernacular." *Id.* ¶ 16.

It is undisputed that, at all relevant times, both Domestic and Ideal had bank accounts with Defendant. Defendant has submitted its agreement with Domestic that is titled "Business Financial Relationship Agreement." Rasmussen Decl., Exh. C. The document lists three persons under the "Deposit Account Signature Card" portion: Susan Erb, Mr. Salzer, and Mr. Mills. *Id.* All three signed the document in two separate places. *Id.*

Defendant has also submitted Ideal's account agreement and Ideal's Washington Business License. *Id.*, Exhs. D, E. The agreement lists Mr. Salzer and Ms. Erb as authorized persons on the accounts, and one of the FirstChoice Business accounts is titled "Domestic Con." *Id.*, Exh. D. With regard to the business license, one of Ideal's registered trade names was "Domestic Construction." *Id.*, Exh E.

Over the next year or so, Domestic (using Ideal's employees) performed construction projects for Home Depot and other companies. All costs were fronted by Ideal, with the expectation and understanding that Ideal would be paid back for all such costs. *See* Mills Dep. at 238, 275, 497. Moreover, all accounting and related financial

operations for Domestic were handled by Mr. Salzer and Ms. Erb out of an office in Tacoma, Washington, which was in the same office space used by Ideal. *See* Mills Dep. at 74-76, 80-81, 438-439. Home Depot paid for some of the projects with checks that were payable to "Domestic Construction, LLC." *See id*., Exh F. These checks were deposited over a four-month time period from February to May of 2006. *Id*. Under the endorsement portion of these checks, it reads "Pay to the Order of Bank of America . . . For Deposit Only, Ideal Services Inc. Accounts Payable." *Id*.

Ideal claims that Mr. Mills used funds from Domestic's bank accounts to cover various expenses. Dkt. 135 at 3-4. Specifically, Ideal alleges that:

> As Mills' and Domestic's bank records make clear, the personal expenses Mills paid out of the Louisiana Domestic accounts included thousands of dollars in checks that Mills wrote to himself (to either "Kermit Mills" or "Cash"); thousands of dollars to car payments for a new Mercedes and other car payments; thousands of dollars in home payments; child support payments; insurance payments; telephone bill payments; household items; lawn care payments; jewelry; travel; and even checks to other businesses owned by Mills. Mills also wrote numerous checks to both his fiancee and his family members.

*Id*. (citing Dkt. 136, Declaration of Christina Gerrish Nelson, Exh. A., Deposition of Kermit Mills at 136-183 (deposition pagination)). Ideal also claims that "in 2006, Mills' business and personal tax return was filed jointly, as a Form 1090." *Id*.

### III. DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.    Ideal's Motion**

Ideal requests "dismissal of all claims alleged by Domestic that rest on the baseless allegation that Ideal, [Mr.] Salzer, and [Ms.] Erb lacked authority to act on behalf of Domestic." Dkt. 139 at 2. Ideal argues that "Domestic cannot prove the essential elements of its claims of Conversion, Misrepresentation, Breach of UCC, or Fraud" and therefore "[a]ll of these claims should be dismissed as a matter of law." Dkt. 125 at 19-20.

Plaintiff argues that there was neither a partnership nor a joint venture between Domestic and Ideal and that neither Mr. Salzer nor Ms. Erb had authority to deposit the

checks from Home Depot. Dkt. 131 at 13-27. The Court, however, has already found that a joint venture existed between Domestic and Ideal and, in the alternative, that Mr. Salzer and Ms. Erb had actual, implied, or apparent authority to negotiate the checks in question. Dkt. 171. Based on these findings, Plaintiff's arguments to the contrary are unpersuasive. Moreover, Plaintiff has failed to articulate any other basis in fact or in law for the claims that Ideal has challenged. Therefore, Plaintiff has failed to meet its burden and the Court grants Ideal's motion for partial summary judgment. Plaintiff's claims against Ideal for Conversion, Misrepresentation, Breach of UCC, and Fraud are dismissed.

**C.    Domestic's Motion**

Domestic requests that the Court enter an order finding that "neither Ray Salzer nor Ideal Services, Inc. has ever been a member in Domestic Construction, LLC." Dkt. 123 at 2. Ideal contends that there exists a question of material fact on this issue because "Domestic registered in Washington as a Foreign Corporation showing three Members: Ray Salzer, Susan Erb, and Kermit Mills." Dkt. 133 at 4. The Court agrees that this registration raises a question of material fact as to the members of Domestic Construction, LLC. Therefore, Domestic's motion is denied.

**D.    Mr. Mills' Motion**

Mr. Mills requests that the Court enter an order granting him summary judgment on the following issues: (1) whether he is subject to personal liability in this matter, and (2) whether he owed a fiduciary duty to Ideal. Dkt. 122 at 2. Ideal argues that material issues of fact exist that preclude judgment as a matter of law. Dkt. 135. Mr. Mills failed to reply.

Under Washington law, members and managers of a limited liability company may not be held personally liable for the company's debts, obligations, and liabilities. RCW 25.15.125(1). There are exceptions to this general rule. For example, an individual member is personally liable for his or her own torts. RCW 25.15.125(2). A member is

also liable for contributions to which they have agreed and for the return of distributions made while the limited liability company is insolvent or which render the limited liability company insolvent if the member knew the distribution was wrongful. RCW 25.15.195(1), .235(2). Under RCW 25.15.060, a member may also be liable under the theory of piercing the veil of the limited liability company if respecting the limited liability company form would work injustice, in the same way that an individual may be personally liable under the theory of piercing the corporate veil.

In general, to pierce the corporate veil a plaintiff must show that the corporate form was used to violate or evade a duty and that the corporate veil must be disregarded in order to prevent loss to an innocent party. *Wash. Water Jet Workers Ass'n v. Yarbrough*, 151 Wn.2d 470, 503 (2004).

In this case, numerous questions of fact exist regarding the business relationship of Domestic, Ideal, and Mr. Mills that preclude ruling as a matter of law that Mr. Mills is not personally liable in this action. For example, Ideal has submitted admissible evidence that Mr. Mills commingled a significant amount of Domestic's business assets with his personal assets. This evidence could be considered a disrespect for the corporate form. Therefore, the Court finds that there exists a question of fact whether Mr. Mills is personally liable in this matter and denies Mr. Mills' motion on this issue.

With regard to the issue of whether Mr. Mills owed a fiduciary duty to Ideal, the Court has found that Domestic and Ideal operated a joint venture to complete certain construction projects in Washington. The Court has also found that there exist questions of fact on the issues of (1) whether Mr. Mills was the sole member of Domestic and (2) whether Mr. Mills commingled Domestic's assets with his personal assets. At this point, it is impossible to rule as a matter of law that Mr. Mills does not owe a fiduciary duty to Ideal because of these questions of fact. Therefore, the Court denies Mr. Mills' motion on the issue of whether he owes a fiduciary duty to Ideal.

Finally, the Court encourages the parties to seek mitigation of the accounting issues that remain in this matter.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Third-Party Defendant's motion for partial summary judgment (Dkt. 125) is **GRANTED**, Plaintiff's motion for summary judgment (Dkt. 123) is **DENIED**, and Fourth-Party Defendant's Motion for Summary Judgment (Dkt. 122) is **DENIED**.

DATED this 1st day of September, 2009.

                                             BENJAMIN H. SETTLE
                                             United States District Judge